# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

MATTHEW COCKBURN,                                                                      PLAINTIFF
ADC #173568

v.                          5:19CV00114-BSM-JTK

DUSTY DODSON, et al.                                        DEFENDANTS

## **PROPOSED FINDINGS AND RECOMMENDATIONS**

## **INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

     1.       Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.    Introduction

Plaintiff Matthew Cockburn, a state inmate incarcerated at the Delta Regional Unit of the Arkansas Division of Correction (ADC), filed this pro se action pursuant to 42 U.S.C. § 1983, alleging inadequate medical care and treatment while he was incarcerated at the Dallas County Detention Center in 2018-2019. Defendants Dallas County Detention Center, Magee, and Pittit were dismissed on June 3, 2019. (Doc. No. 15)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts, filed by remaining Defendant Dusty Dodson, Jail

2

Administrator (Doc. Nos. 45-47). Plaintiff filed a Motion for Order and Responses to the Summary Judgment Motion (Doc. Nos. 51-53)

## II.   Amended Complaint

Plaintiff alleged "medical neglect" while housed as a pretrial detainee at the Dallas County Detention Center. (Doc. No. 5, pp. 3-4) Specifically, he stated he notified the Jail of his medical needs which included asthma, back problems and depression, and submitted several medical requests and grievances requesting his medications and to see a doctor. (Id., p. 4) Although his requests began on October 22, 2018, he did not see the doctor until December 6, 2018, and did not receive his medications until two weeks later. (Id.) He sued Defendant Dodson as administrator of the facility because he personally reviewed all medical requests and grievances and "should be personally and professionally (sic) responsible (sic) for providing my medical needs." (Id., p. 5)

## III.   Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has

met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Official Capacity

Initially the Court agrees with Defendant that Plaintiff's monetary claim against him in his official capacity should be dismissed, because Plaintiff did not allege that Dodson's actions were taken pursuant to an unconstitutional policy, practice, or custom, or any widespread pattern of unconstitutional conduct. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Defendant states Plaintiff presented no evidence of an on-going custom of denying medical care or medication to inmates, and Plaintiff stated in response that the policies at the Jail were not followed. (Doc. No. 53) Therefore, absent an allegation that the policies themselves or widespread conduct were unconstitutional, the Court finds the monetary claim against Defendant in his official capacity should be

4

dismissed.

### B. Individual Capacity

Defendant also asks the Court to dismiss Plaintiff's claims against him in his individual capacity, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

5

could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

According to Jail records provided by Defendant, upon Plaintiff's arrival at the Jail on October 20, 2018, a nurse interviewed him and noted that he had a history of asthma and mental illness but took no medications at that time. (Doc. No. 47-1, p. 1)However, on October 24, 2018, Plaintiff filed a medical request stating he took medications for depression, sciatica and anxiety, and requested that they be provided to him. (Doc. No. 47-2) On November 1, 2018, he filed a medical request and grievance asking to see the doctor in order to receive his medications. (Doc. Nos. 47-3, 47-4) Defendant responded to the grievance on November 2, 2018, that medical requests are printed and sent to the doctor for his review, and the nurse responded on November 5, 2018, asking in which pod Plaintiff was housed. (Id.) On November 8, 2018, Plaintiff filed a second request to see the doctor. (Doc. No. 47-5) The nurse visited Plaintiff in his pod and told him she needed prescription bottles or a list of medications from the pharmacy or something from his doctor in order to order his medications. (Doc. No. 47-1) Plaintiff again requested to see the doctor for his medications on November 16, 2018 and the nurse responded that he would see the doctor the following week. (Doc. No. 47-6) The nurse also visited plaintiff again and Plaintiff told her he did not know what medications he took or which pharmacy he used. (Doc. No. 47-1)

---

circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

On November 26, 2018, Plaintiff filed a medical request and grievance asking to see the doctor to get his medications, and he filed another request on November 29, 2018. (Doc. Nos. 47-7 - 47-9) Dodson responded to the grievance on November 28, 2019 that medical requests were forwarded to the doctor. (Doc. No. 47-8) The nurse responded to Plaintiff's November 29, 2018 request to see the doctor on December 13, 2018, with the notation that he saw the doctor "on Monday." (Doc. No. 47-9) The nurse visited Plaintiff on December 3, 2018, and Plaintiff identified the pharmacy he used. (Doc. No. 47-1) The nurse contacted the pharmacy the next day for Plaintiff's medication list, but the pharmacy did not respond until December 13, 2018. (Id.)[2] The nurse faxed the request for Plaintiff's medications on December 14, 2018; they were delivered on December 18, 2018 and provided to Plaintiff on December 19, 2018. (Doc. Nos. 47-10 – 47-12) However, the pharmacy failed to deliver Plaintiff's rescue inhaler and Plaintiff filed complaints on December 19, 2018 and December 23, 2018 about this. (Doc. Nos. 47-12, 47-13) Plaintiff received the inhaler on January 3, 2019. (Doc. No. 47-14)

Based on these records, Defendant states Plaintiff provides no evidence that he acted with deliberate indifference to his serious medical needs, noting that Plaintiff initially told the intake person that he did not take any medications and then could not identify the names of the medications or the pharmacy until much later. In addition, Defendant states Plaintiff cannot show by verifying medical evidence in the record, that he suffered a detrimental

---

[2] On Plaintiff's December 3, 2018 request, the nurse noted the pharmacy as Walgreens in Lafayette (Louisiana), and the five medications which were identified to her as Plaintiffs. (Doc. No. 53, p. 38)

effect from the delay in receiving his medication.

In his responses, Plaintiff first moves for a court order directing the Jail or the Walgreens pharmacy to provide a copy of a medical release form he signed. He states that the release is needed to prove that Defendant falsified documents given to the Court. Plaintiff also disputes the nurse's notes submitted by the Defendant and denies that the nurse came to see him and that he told the nurse he did not know what pharmacy filled his medications. He admits he saw the doctor on December 6, 2018 and was given a medical release at that time to sign to be faxed to Walgreens so that it could release his prescription information. He complains about the delay in seeing the doctor, in receiving his medications and inhaler, and claims that Defendant told him on December 23, 2018 that the inhaler was on the desk of the intake officer. When he asked the nurse about this, however, she told him the pharmacy messed up on the delivery and that he should get the inhaler by January 2, 2019.

Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In the Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). Therefore, to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that Defendant acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating

8

a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Furthermore, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). A prison official who is "not involved in treatment decision made by the medical unit's staff and 'lacked medical expertise,...cannot be liable for the medical staff's diagnostic decision[s].'" Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Camberos, 73 F.3d at 176). Finally, "if any claim of medical indifference ... is to succeed, it must be brought against the individual directly responsible

9

for [plaintiff's] medical care." Kulow v. Nix, 28 F.3d 855, 859 (8th Cir. 1994) (quoting Brown, 957 F.2d at 566).

In this particular case, the Jail and medical records indicate that part of the delay in Plaintiff's receipt of medications was due to his failure to identify those medications or the pharmacy he used. Although Plaintiff disputes that the nurse came to see him and claims that upon intake he made the Jail aware of his medical conditions, he does not dispute that he did not initially identify the medications he needed. Although the Court is concerned about the length of the delay between Plaintiff's first request to see the doctor on October 1, 2018 and when he did see the doctor on December 6, 2018, Plaintiff provides no evidence to show that Defendant was responsible for the delay or that he the delay caused a detrimental effect to his health. The records do not support deliberate indifference by the Defendant or the nurse, and show that once the medications were identified, they were ordered and provided to Plaintiff within a reasonable length of time.

Finally, the Court finds that Plaintiff's Motion for Order to obtain a copy of the medical release should be denied. Although Plaintiff claims that the release is necessary to show that Defendant falsified documents presented to the Court, he does not identify which documents were falsified or claim that the medication information Defendant ultimately received from Walgreens was inaccurate or somehow harmful to Plaintiff.[3]

---

[3] Upon Plaintiff's Motion, the Court extended the discovery deadline to March 27,k 2020, on January 27, 2020. (Doc. No. 36) In addition, Plaintiff filed a Notice to the Court on April 29, 2020 (after Defendant filed the present motion, stating that he received the discovery requested from Defendant and was satisfied with such, noting that he may need

Therefore, absent additional facts or evidence from Plaintiff to show otherwise, the Court finds that Defendant acted reasonably under the circumstances, and that no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

### IV. Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1. Plaintiff's Motion for Order (Doc. No. 51) be DENIED.

2. Defendant's Motion for Summary Judgment (Doc. No. 45) be GRANTED, and Plaintiff's Complaint be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 8th day of June, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE

---

more discovery at a later date. (Doc No. 48)